NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ANTONIO GATTO, PETITIONER, v. NEWARK PLASTER CONTRACTING CO., RESPONDENT.

Decided May 6, 1940.

For the petitioner, *Cox & Walburg* (by *Arthur F. Mead*).

For the respondent, *James J. Skeffington.*

The petitioner testified that on August 18th, 1939, while working as a plasterer for the respondent at the Veterans Hospital in Lyons, New Jersey, in connection with his work he and a fellow employe were plastering a room on the morning of that day. In connection with this work they mixed the plaster and put the plaster on the walls and ceiling. About one-half hour before the noon lunch period, he went into a closet in connection with the room to do the plastering in the closet which work consumed about one-half hour. He stated there was no air in the closet and it was muggy and

that he was sweating and after working in the closet for a while he began to get weak and about five or six minutes before twelve o'clock felt "broken up" so that he couldn't do anything and had a pain which he indicated to be in about the region of the mid-sternum.

He stated he sat on the scaffold until noon feeling bad and at noon got off the scaffold, went downstairs to an open part of the building which he called a stoop. Meanwhile his fellow workman had gone to get his lunch and when the fellow workman came back with the lunch the petitioner could not eat so he went over a short distance and got a drink of a little water and on the way back fell down. He remained on the ground and his foreman was called and he was taken in the car to the medical section of the hospital where he was working and then carried upstairs and put to bed. After five days he was discharged from the hospital and taken home in a private car, carried upstairs and put to bed where he remained for about two and one-half months. After that period of time he got up and moved around a little bit and stated that he was unable to exert himself, unable to do any work of any kind and that he becomes short of breath when he moves around very much. He stated that he never had any such trouble before and that he had worked a number of years as a plasterer without complaint or difficulty.

On his behalf the fellow workman testified with respect to the work which was being done by him and the petitioner in the morning of August 18th and testified in detail as to what the work involved. He stated the petitioner did not complain to him during the morning but after both of them had gone downstairs for lunch and he, the fellow workman, had procured the lunch for the petitioner, the petitioner could not eat his lunch, went over to get a drink of water and on the way back collapsed and had to be carried in a car to another part of the hospital.

Certain portions of the official weather reports were stipulated which reports showed that the temperature readings, daylight saving time, were as follows: August 18th, 1939—eight A. M., seventy-two; nine A. M., seventy-five; ten A. M.,

eighty-one; eleven A. M., eighty-four; twelve noon, eighty-seven; twelve-thirty, ninety-one; one P. M., eighty-eight.

On behalf of the petitioner, Dr. Sidney Gardner, a doctor connected with the Veterans Hospital at Lyons, and Dr. J. H. Thornton testified with respect to the condition of the petitioner while he was a patient at the hospital from August 18th, 1939, to August 22d, 1939. The petitioner was admitted as an emergency case about twelve-thirty, his temperature was ninety-six, pulse 126 and respiration twenty-four. His wife was notified of his critical condition and a priest was called. A diagnosis was made of heat exhaustion and the breath sounds were so loud on the first day that it was difficult to obtain heart sounds until the following day. At that time there was definite auricullar fibrillation and treatment was rendered for the heat exhaustion and the heart condition.

Also on behalf of the petitioner Dr. Irving Willner testified as treating physician and Dr. Applebaum testified as consultant. It appears further that the petitioner is at present under conservative treatment and has made some recovery from his original critical condition. The doctors made a diagnosis of cardiac fibrillation, a dilation on the left side and impairment by reason of cardiac collapse. The doctors stated in their opinion that the disability was by reason of the cardiac condition which petitioner now has and which required continuous treatment to restore the cardiac reserve as much as possible. There is, however, permanent functional disability by reason of the heart condition which in the opinion of the doctors came about by reason of the work which the petitioner did from the conditions under which he worked the morning of August 18th, 1939, more particularly the effort and the atmospheric conditions involved. Dr. Willner, attending physician, was unable to state just what the permanent disability was or ultimately will be since it was difficult to make a prognosis. He stated the existing disability was total incapacity to work although the petitioner was able to get about as long as he stayed within the limits of his cardiac reserve.
\* \* \*

On behalf of the respondent the foreman, Mr. Kline, testified that the work which was being done on the morning of August 18th, 1939, was in connection with plastering a room on the third floor on the north side of the building. He stated the windows were opened from the bottom and that plastering was being done on the ceiling and side walls of the room and that sometime before the noon hour Mr. Gatto did some plastering in a closet adjacent to the room. He stated that it was warm on that morning and as a matter of fact the men were perspiring quite a bit but that the petitioner did not complain to him during the morning with respect to his physical condition. However, a few moments after twelve o'clock his attention was called to the fact that Mr. Gatto had collapsed and was lying on the ground near the porch where the men had their lunch. He and another workman then put Mr. Gatto in a car and then took him over to the medical portion of the hospital.

For the respondent Dr. Kaufman testified with respect to examinations made by him August 25th, 1939, and March 13th, 1940. He made a diagnosis of organic heart disease, enlargement of the left side, heart failure and a lowering of cardiac reserve. He stated that the condition was one which may or may not have come from the heat exhaustion or the conditions under which the petitioner was working on August 18th, 1939. He stated that on his examination of March 13th he found the petitioner's general condition was very much improved and the cardiac condition was under control and much better. The blood pressure was within normal range and he estimated the disability was approximately twenty-five per cent. of total.

I have had occasion to consider the testimony presented before me and I find and determine that the petitioner did sustain an accident arising out of and in the course of his employment when he collapsed on August 18th, 1939. He collapsed as a result of a cardiac condition and heat exhaustion and the end result has been a cardiac condition. In my opinion the petitioner's heart was not without impairment previous to August 18th, 1939, and that the work which he

did and the conditions under which he worked brought about a collapse of an unnormal heart.

As to the disability, I find that the petitioner is entitled to temporary disability from August 18th, 1939, to April 29th, 1940, and permanent disability of twenty-five per cent. of total.

\* \* \* \* \* \* \*

JOHN C. WEGNER,
*Deputy Commissioner.*